Linda A. Webb
HAGANS, AHEARN & WEBB
310 K Street, Suite 400
Anchorage, AK 99501
(907) 276-5294

Attorney for Defendant

U. S. DISTRICT COURT

DISTRICT OF ALASKA

UNITED STATES OF AMERICA,   Case No. 3:05-cr-24JWS

         Plaintiff,

  vs.

PETRO SNEGIREV,
         Defendant

AMENDED 28 U.S.C. §2255 PETITION TO SET
ASIDE/VACATE CONVICTION

STATEMENT OF CASE

Petro Snegirev, Petitioner, was indicted on March 15, 2005, and convicted, by jury, on June 14, 2005, of one count of violation of 21 U.S.C. §841(a)(1) & (b)(1)(B), distribution of 50 grams or more of a mixture or substance containing methamphetamine and one count of violation of 28 U.S.C.§841(a)(1) & (b)(1)(C) possession with intent to distribute. (Exhibit A, Judgment).

Federal Public Defender, Kevin McCoy, was appointed to represent Petitioner through trial and sentencing, which occurred on November 9, 2005. Petitioner was sentenced to ten (10) years and one month incarceration on each count. ( Exhibit B, Sentence). Petitioner filed multiple motions during, and after, trial including: 1) motion to dismiss trial counsel, which was denied; 2) motion to dismiss the judge, which was denied; 3) petition for habeas corpus, 28 U.S.C. §2241(a)(3), which was denied; 4) petition for mandamus, which was denied; 5) appeal, which was denied; and 6) this amended petition to set aside and vacate conviction, pursuant to 28 U.S.C.§2255 on the basis that Petitioner's Sixth Amendment Constitutional right to counsel was violated by trial counsel.

## STATEMENT OF FACTS

The government's evidence, at trial, was that in January 2005, Anchorage Police Department (APD) Detective Doll was contacted, through a State Trooper, by an incarcerated felon, Shannon Lovell, who offered and agreed to become a Confidential Informant (CI). In return for CI Lovell's information and cooperation, Detective Doll arranged for the CI Lovell's release, housing, vehicle, cell phone, and all other incidentals necessary for CI Lovell to contact Mr. Snegirev and arrange to purchase drugs from him. Under the direction and control of Detective Doll, CI Lovell wore a wiretap for all contacts with Mr. Snegirev. No warrant was attained prior to the contacts or any conversations with Mr. Snegirev. Over a two week period, from February 17, 2005 through March 2, 2005, CI Lovell, made multiple contacts with Mr. Snegirev, introduced

him to APD undercover Detective Dorr, purchased methamphetamine from Mr. Snegirev, using monies provided by the APD agents and encouraged Mr. Snegirev to sell methamphetamine to Detective Dorr, who asked Mr. Snegirev to obtain one pound of uncut methamphetamine for him. CI Lovell told Mr. Snegirev to charge $2,000. per ounce for the drug and to charge $32,000. for the one pound to ensure that Mr. Snegirev would receive a profit from the sale. Mr. Snegirev sold one ounce to CI Lovell for $2,000, and three ounces to Detective Dorr for $6,000, with delivery of two ounces. Mr. Snegirev requested that the two ounces sold Detective Dorr be returned because of a controversy over Mr. Snegirev's failure to provide the remaining one ounce paid for by Detective Dorr. Detective Dorr refused to return the drugs and receive his money back. (Exhibit C, pp. Dorr 1-40; Doll 41-60).

Shortly after the controversy arose, CI Lovell was instructed to pick up Mr. Snegirev and to drive him to a local restaurant. On arriving at the restaurant parking lot, CI Lovell was taken into custody, and Mr. Snegirev was arrested. At the time of the arrest, a plastic bag was found next to the front passenger seat in which Mr. Snegirev had been sitting. The plastic bag contained an additional amount of methamphetamine. The two purchases of drugs contained 20.3 grams and 41.6 grams, respectively, of actual methamphetamine. The plastic bag, recovered from the vehicle, contained 19.1 grams of actual methamphetamine, for a total amount of 81 grams. (Exhibit C, p.31).

During trial, the government's witnesses were the APD Detectives, and the DEA lab chemist, William Moriwaki, who analyzed the drugs for the actual

methamphetamine content. Mr. Snegirev's trial counsel cross examined the two Detectives but did not cross examine the DEA chemist. Trial counsel called no witnesses for Mr. Snegirev, and did not move for acquittal at the conclusion of the government's case. (Exhibit C, p.62). Trial counsel rested Mr. Snegirev's defense without presentation of any defense or meaningful adversarial testing of the prosecution's case.

ARGUMENT

The issue before the court is whether Mr. Snegirev's Sixth Amendment Constitutional rights were violated by the ineffective assistance of trial counsel. To demonstrate that trial counsel's representation was deficient, Mr. Snegirev must overcome a strong presumption that trial counsel's performance fell within a wide range of reasonable assistance. *Silva v. Woodford, 279 F.3d 825, 836(9th Cir. 2002),cert.denied 537 U. S. 942 (2002), quoting Strickland v. Washington, 466 U. S. 668, 686(1984).* Mr. Snegirev, in order to meet the *Strickland* standard that trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial's outcome cannot be relied upon as having produced a just result, must identify specific trial counsel conduct that was deficient and that the errors made were prejudicial to Mr. Snegirev's defense. *Id.* To establish prejudice, a defendant must show that there was a reasonable probability sufficient to undermine confidence in the outcome of the trial. *Id.* Although individual deficiencies may not by themselves meet the *Strickland* prejudicial standard, when considered cumulatively the deficiencies may constitute sufficient prejudice to justify grant of Petitioner's writ. *U. S. v. Cronic, 466 U. S. 648, 649 (1984).*

The *Strickland* court found that counsel's representation entails certain duties, one of which is the duty to advocate for the criminal defendant. *Strickland v. Washington, 466 U .S. at 686.* Trial counsel in this case failed to advocate for Mr. Snegirev during the pretrial and trial period to the cumulative effect of failing to subject the prosecution's case to any meaningful adversarial testing. *Anders v. California, 386 U. S. 738, 743, fn. 17 (1967).*

Mr. McCoy, on May 13, 2005, was notified by the U. S. Attorney that CI Lovell would not testify for the government at trial. (Exhibit D). Mr. McCoy knew the criminal history of CI Lovell and knew that the he had been convicted of numerous felonies, was incarcerated waiting for a revocation of probation hearing, and wanted out of jail badly enough to contact APD in order to secure his own release from jail. Mr. McCoy had ample time in which to subpoena CI Lovell for trial and to subject him to a vigorous cross examination in order to destroy any credibility which might have been remotely accredited to CI Lovell. Mr. McCoy did nothing to ensure that CI Lovell would be submitted to a vigorous examination. The jurors were left with only the testimony of the Detective Dorr's opinion that he did not trust CI Lovell and that he was self serving. His opinion was watered down and ineffective in revealing the depth of CI Lovell's involvement in criminal conduct. There was no cross examination of either Detective Doll or Dorr as to the length of CI Lovell's incarceration if his probation had been revoked. Information concerning the return of CI Lovell to prison may reasonably have

made the jury consider how desperate CI Lovell was to not return and his motivation to lie.

Mr. McCoy knew that the government intended to rely upon the testimony of the DEA chemist William Moriwaki concerning the purity/quantity of methamphetamine sold to CI Lovell and Detective Dorr. Mr. McCoy presented no testimony to test the DEA chemist as to the amount of the drug and/or the quality control of the DEA laboratory, or chain of custody of the drugs, or the "field" testing that APD Special Agent Zack Jones attested to before the Grand Jury, which occurred prior to testing by the DEA chemist. During pretrial discovery, Mr. McCoy failed to obtain any discovery from the government concerning the DEA laboratory proficiency and or methods of obtaining an analysis, in order to challenge the 81 grams that the government represented was the amount at issue. Mr. Snegirev was convicted of the 81 grams. Sentencing was scheduled for November 2005. When Mr. McCoy received the PSR, he then pursued discovery of the DEA laboratory proficiency in order to challenge the DEA analysis of the quantity and purity of the methamphetamine. Discovery at that time was virtually a day late and a dollar short, as conviction for the 81 grams had already occurred. Mr. McCoy should have obtained the laboratory data in order to meaningfully cross examine the DEA chemist at trial. Further, after conviction, Mr. McCoy requested that his expert chemist and the DEA chemist meet with the government, and himself, to discuss the testing process and proficiency. This did not occur. Again, the purity/quantity was already established by the conviction so that raising either issue

before the sentencing judge was moot. Mr. McCoy had no information about or from the DEA laboratory to provide any type of adversarial testing of the government's representations. He recognized the importance of the data only after the fact which left the jury with no option but to follow the jury instructions to consider the testimony and exhibits provided to it during trial. Moreover, the government offered to produce the methamphetamine for independent testing by Mr. Snegirev's expert chemist, yet, Mr. McCoy did not obtain any analysis independent of the government's analysis. ( Exhibit F). Mr. McCoy's failures to obtain the discovery he later requested concerning the DEA laboratory's quality control, method of analysis, lack of independent testing of the DEA laboratory, and to obtain his expert's analysis of the drugs to use at trial to defend Mr. Snegirev were unreasonable and ineffective assistance, both specifically and cumulatively, when Mr. McCoy knew that the base offense level for a drug related offense was dependant upon the quantity of the drugs involved. *U.S. v. Harrison-Philpot, 978 F.2d 1520, 1522(9th Cir. 1992).*

Further, APD Officer Zack Jones attested to the Grand Jury that the drugs confiscated at the time of arrest on March 2, 2005 were "field" tested. Mr. McCoy had access to the Grand Jury transcript prior to trial. Mr. McCoy did not cross examine any APD Detective as to what "field" testing involved. There was no challenge or exploration of whether such testing had any impact on the laboratory analysis. Mr. McCoy did nothing to raise any reasonable doubt about the purity/quantity of the drug, the chain of custody, the "field" testing impact, and/or the quality control of the DEA

laboratory. The sentencing court, like the jury at trial, had only the government's evidence upon which to base any decision.

Mr. McCoy's failure to obtain the discovery that he knew was significant to the prosecution's case, as well as Mr. Snegirev's challenge to the purity/quantity of actual methamphetamine, was a significant error of ineffectiveness. Mr. McCoy's errors can not be explained away as sound strategy and/or tactics. Counsel can not make a strategic or tactical choice when he did not obtained the facts on which a strategic or tactical decision could be made. *U.S. v. Gray, 878 F.2d 702, 711(3rd Cir. 1989).* To not request discovery has been held to be constitutionally deficient. *Kimmelman v. Morrison, 477 U.S. 365, 388 (1986).* A particular decision not to investigate must be directly assessed for reasonableness in all circumstances. *Strickland v. Washington, 466 U. S. at 691.*

Mr. McCoy failed to raise any defenses for Mr. Snegirev. Although the APD set up the release of CI Lovell, provided for all his expenses, including the purchase monies, directed all contacts and communications, directed the amount of purchase, and, through CI Lovell, told Mr. Snegirev what amount of money to request for delivery of a pound of methamphetamine, Mr. McCoy failed to raise a defense of entrapment or of outrageous conduct by the APD when the only information the Detectives had about Mr. Snegirev was from CI Lovell, whom both Detectives testified they did not trust, was a liar and self serving. There was no information known by the APD about any prior criminal activity by Mr. Snegirev, who had no prior felony convictions. Although, an entrapment defense is difficult to prove in many instances because of the predisposition

requirement, Mr. McCoy should have defended on the basis of the outrageous conduct of the APD, as the defense does not require that a defendant have a predisposition to commit a crime. *U. S. v. Simpson, 813 F. 2d 1462, 1465, fn. 2 (9th Cir 1987)*. No challenge was made to the APD Detectives' creative activity, intense and aggressive involvement in direction and payment of CI Lovell, and that the only customers of Mr. Snegirev were those that the APD provided. A defendant's predisposition is irrelevant to a defense of outrageous conduct. The focus of the defense is on the government agents' conduct and whether the conduct violates the due process rights of an individual. *Hampton v. U. S. 425 U. S. 484 (1976)*.

      Mr. McCoy made no adversarial testing of Count 2, the possession with the intent to distribute. There was no evidence presented at trial that Mr. Snegirev had possession of the plastic bag with methamphetamine to distribute to a specific person or to any person on March 2, 2005. Mr. McCoy did not cross examine the APD Detectives as to whom Mr. Snegirev intended to distribute the 19.1 grams, when the distribution was to occur, where the distribution was to occur, and more significantly did nothing to confirm that as of the time the APD instructed CI Lovell to pick up Mr. Snegirev to transport him to the Spenard restaurant, the common scheme was completed. CI Lovell did not have any monies provided by the APD Detectives, on March 2, 2005, to purchase Mr. Snegirev's 19.1 grams. At the time of the arrest, Mr. Snegirev was not with CI Lovell to meet anyone to sell the 19.1 grams. Mr. Snegirev believed that he was going to a restaurant with CI Lovell. Mr. McCoy failed to argue that Mr. Snegirev possessed the

plastic bag of methamphetamine for his own use. The importance of the lack of any such challenge to the government's case was evident when the Jurors questioned the court as to whether the jury must find both prongs of Jury Instruction No. 11, (Exhibit J, p.2), concerning possession with intent to distribute. The court, prosecutor, and Mr. McCoy interpreted the inquiry as that of raising the issue of a lesser included offense. Mr. McCoy agreed that the two prongs of the jury instruction were to be determined rather than advocating that the 19.1 grams confiscated from CI Lovell's vehicle, at the time of Mr. Snegirev's arrest, was for his personal use and not part of the same conduct or common scheme as drugs intended for distribution. *U.S. v. Kipp, 10 F.3d 1463, 1465-66 (9th Cir. 1993).* If Mr. McCoy had defended Mr. Snegirev on the basis that he had the 19.1 grams in his possession and that the drug was for his personal use, and not with any intent to distribute, there was a reasonable probability that the jury would not have convicted Mr. Snegirev of Count 2. An error of such magnitude is prejudicial when conviction subjected Mr. Snegirev to a possible 20 year sentence for Count 2.

As a result of trial counsel's deficiencies, the only evidence before the jury was that presented by the prosecution. Jury Instructions Nos. 5 &13 (Exhibit J, p. 1 & 3) specifically directed, the Jurors, that the verdict was to be based on the evidence, that is , the sworn testimony and exhibits, and law presented during the trial. As Mr. McCoy failed to make any meaningful challenge to the prosecution's case, to raise a reasonable doubt about the credibility and quality control of the DEA laboratory, and to present any exhibits, contrary to the prosecution's case, the verdict was guaranteed. Mr. McCoy's

failures resulted in a trial which did not meet the constitutional requirements of substantial equality and fair process. Those requirements are only attained where counsel acts in the role of an active advocate on the behalf of his client. *Anders v. California, 386 U. S. at 744.* The Supreme Court in *U. S. v. Cronic, 466 U. S. at 653-57,* held that the right to effective counsel is the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing and if the process loses its character as a confrontation between adversaries, the constitutional guarantees are violated. A break down in the adversarial process justifies a presumption that a conviction was insufficiently reliable to satisfy the Sixth Amendment. *Id. at 662.* In *Bell v. Cone, 535 U. S. 685, 697(2002),* the court stated that when it spoke in *Cronic* of the possibility of a presumption of prejudice based on an attorney's failure to test the prosecutor's case, the court indicated that the failure must be complete.

      The second prong of *Strickland* is met in this case. Trial counsel's deficiencies, both singularly and cumulatively, were serious errors that deprived Mr. Snegirev of a fair trial. The prosecutor's case was based on APD Detectives' testimony and DEA laboratory analysis of the quantity of the methamphetamine. Trial counsel failed to obtain the DEA laboratory data to use to challenge the quality control of the DEA laboratory, which had only internal controls. The failure to raise and cross examine the ADP Detectives of the impact of "field" testing by APD Agent Jones, prior to the DEA laboratory testing, foreclosed any meaningful challenge to the purity/quantity of the methamphetamine. The failure to present any adversarial testing of the credibility of the

CI Lovell concerning his great desire to not return to prison and his willingness to accuse anyone of criminal action in order to secure his own release foreclosed a meaningful testing of CI Lovell's accusation against Mr. Snegirev.

The failure to raise the defense of the outrageous conduct of the APD Detectives in their reliance on the accusations made by a person they did know and did not trust and believed to be a liar, their set up, planning and implementation of the criminal scheme foreclosed any challenge that Mr. Snegirev's due process rights were violated. Mr. McCoy's failure to consider a lesser included crime for possession rather than agreeing that possession with intent to distribute was to be determined by the jury, coupled with the other above cited errors were so cumulative to have rendered the trial process unreliable. Moreover, trial counsel had no reason to believe that the jury would acquit Mr. Snegirev, of possession with intent to distribute, when he presented no evidence to support a defense that the 19.1 grams was for Mr. Snegirev's use. A reasonable probability of a different result of guilt was manifest in the Jurors' inquiry, to the court, concerning the ability to find possession, without an intent to distribute. ( Exhibit K).

Mr. McCoy's pretrial and trial deficiencies were insidious and complete, guaranteeing conviction instead of providing an adversarial testing of the prosecution's case as required by the Sixth Amendment constitutional guarantees. Trial counsel's deficiencies were highly prejudicial, and upset the balance of the adversarial process resulting in excess of ten years of incarceration. The cumulative prejudice from trial

counsel's failures amounts to sufficient grounds for a finding of ineffective assistance of counsel. *Harris v. Wood, 64 F.3d 1432, 1438 (9th Cir. 1995).*

Mr. Snegirev's Petition should be granted.

Dated this 7th day of November, 2007 at Anchorage, Alaska.

HAGANS AHEARN & WEBB
Attorneys for Defendant


By:       /s/Linda A. Webb
Linda A. Webb
Alaska Bar No. 8806148

HAGANS, AHEARN & WEBB
310 K Street, Suite 400
Anchorage, AK  99501
(907) 276-5294:  Phone
(907) 276-8732:  Fax
E-mail:  haw@alaska.net


**CERTIFICATE OF SERVICE**

I certify that a copy hereof was served
electronically this 7th day of November 2007,
on:

James Goeke, Esq.
Asst. U. S. Attorney
Office of the U. S. Attorney
222 West 7th Ave., #9 Room 253
Anchorage, AK  99513-7567


       /s/Linda A. Webb
Linda Anna Webb