# Federal Public Defender
## for
## The District of Alaska

Rich Curtner  
Federal Public Defender

550 West Seventh Ave., Suite 1600  
Anchorage, Alaska 99501

Phone: (907) 646-3400/FAX: (907) 646-3480

August 3, 2005

James Goeke  
Assistant U.S. Attorney  
222 W. 7th Ave., #9, Rm. 253  
Anchorage, Alaska 99513-7567

    Re: *United States v. Petro Snegirev*, A05-0024 CR (JWS)

Dear Jim:

As you know the probation service issued two draft presentence reports in the above styled matter. The first draft set Mr. Snegirev's total adjusted offense level at level 26 and recommended a sentencing guideline range of 63 to 78 months. The second draft set his total adjusted offense level at level 32 and recommended sentencing guideline range of 121 to 151 months. The difference between the two reports relates directly and dramatically to the purity quantification of the three drug exhibits submitted to the D.E.A. Western Laboratory in San Francisco.

My understanding is that three drug exhibits were submitted to the D.E.A Western Laboratory in San Francisco. The purpose of this letter is to respect disclosure of the following documents, records, and information relating to each of the three drug exhibits.

- All DEA Form-7's related to each drug exhibit;

- All DEA Form-500's related to each drug exhibit;

- All GC/MS printouts relating to analyses done on each of these exhibits (including blanks, calibrators, and controls run at the same time as each of the exhibits);

- All attachments to these forms such as notes and calculations that link weights of the exhibit to the GC/MS results (usually given in milligram/ml) via manipulations such as weighing and dilutions performed by the chemist. (My information is that these records may appear on blank sheets of paper or on a relatively new DEA Form - 86);

Exhibit E-1

- All spread sheets prepared by the chemist to document his or her calculations;

- Any other documents, records, or notes that pertain to the accuracy of the results, including but not limited to results or reports of any Quality Assurance Programs that DEA Western Laboratory subscribes to in order to document the accuracy of its quantitative analyses of methamphetamine by GC/MS.

This discovery request is made pursuant to the Sixth Amendment confrontation and compulsory process clauses.

Please let me know at your earliest convenience if the government would have any difficulty responding to this request.

Sincerely yours,

*[signature]*

Kevin F. McCoy
Assistant Federal Defender

    cc:    Petro Snegirev

E-2

# Federal Public Defender
## for
## The District of Alaska

Rich Curtner
Federal Public Defender

550 West Seventh Ave., Suite 1600
Anchorage, Alaska 99501

Phone: (907) 646-3400/FAX: (907) 646-3480

October 26, 2005

James Goeke
Assistant U.S. Attorney
222 W. 7th Ave., #9, Rm. 253
Anchorage, Alaska 99513

    Re:    Outstanding Discovery Ordered in *United States v. Petro Snegirev*, A05-0024 CR (JWS)

    By:    Fax to 271-1500

Dear Jim:

As you know, with the government's agreement, September 6, 2005, Judge Sedwick has granted an order compelling discovery which provides as follows:

> Any other documents, records, or notes that pertain to the accuracy of the results, including but not limited to results or reports of any Quality Assurance Programs that DEA Western Laboratory subscribes to in order to document the accuracy of its quantitative analyses of methamphetamine by GC/MS.

*See* Docket No. 55. The government agreed to this order after the D.E.A. Western Laboratory failed to respond to any of the discovery requests in my August 3, 2005, letter which I understand was faxed to the laboratory immediately after you received it.

Sentencing was continued from September 12, 2005, to November 9, 2005, so that the issues related to the actual methamphetamine weights could be resolved without further continuances.

Based on our conversation yesterday, I now understand the government to believe the above-quoted portion of the discovery order to be unnecessarily over broad for two reasons; first because the materials already provided demonstrate that positive control samples were used in conjunction with the actual methamphetamine quantification, and second, because the request seeks voluminous documents, production of which are unnecessarily burdensome.

E-3

James Goeke
October 26, 2005
Page 2

I am hoping this letter will focus the request and perhaps make what I am looking for more clear. I do not believe that the materials I am asking for are as voluminous as you may think. In fact, I suspect that we are not talking about more than 10 to 20 pages.

I have retained Dr. Brian Sedgwick to assist me in assessing the accuracy of the actual methamphetamine amounts that are driving the advisory sentencing guideline computation in Mr. Snegirev's case. I have attached a copy of his resume for your review. His opinion is that the volume of materials we are asking for amount to 10 to 20 pages. The easiest way for me to proceed is to review the conversation I had with Dr. Brian Sedgwick after you and I spoke yesterday.

Dr. Sedgewick tells me the following:

- The materials provided do not demonstrate that the Western Laboratory ran a **positive control sample** when it tested for methamphetamine and then tested to determine the quantity of actual methamphetamine in the three drug samples;

- The Nicolet spectra method reflected in the graphs provided for the three drug exhibits is not the method the Western Laboratory used to quantify actual methamphetamine; rather the Nicolet spectra method only tests only for the presence of a drug, in this case methamphetamine; the Nicolet spectra method provides no usable information about the amount of actual methamphetamine in the three drug exhibits;

- The method used by the Western Laboratory to quantify the actual methamphetamine is the GC/MS method;

- The GC/MS graphs that are provided for the three drug exhibits fail to establish that a **positive control sample** is used in connection with the GC/MS quantification of the actual methamphetamine in the three drug exhibits;

- A **positive control sample** is a solution containing methamphetamine at a known drug concentration which is obtained from a separate source than the solution used as a calibrator for the GC/MS.

What Dr. Sedgwick cannot determine from the materials provided to date is (1) whether a positive methamphetamine control sample was used in connection with the testing of the three drug exhibits in this case and (2) whether the D.E.A. Western Laboratory methamphetamine quantification practices are subject to external proficiency testing.

E-4

James Goeke
October 26, 2005
Page 3

I am specifically asking the government to provide that information in connection with the three drug exhibits that were tested here. I believe this information is already encompassed in the order compelling discovery and I believe that we are talking 10 to 20 pages of materials.

### Information Regarding Positive Control Sample

- Does the D.E.A. Western Laboratory run a positive control methamphetamine sample when they run a GC/MS quantification on methamphetamine?

- If the answer is yes, how frequently is the positive methamphetamine control sample run – with every test – on a daily basis – or on a weekly basis?

- If a positive methamphetamine control sample is run, what is the concentration of the control and what are the acceptance criteria for this sample when it is run through the GC/MS?

- If a positive methamphetamine control sample was run in connection with the three drug exhibits in this case, what were the GC/MS results for the positive methamphetamine control sample?

### Information Regarding External Proficiency Testing

- Does the D.E.A. Western Laboratory perform GC/MS analyses on externally supplied proficiency test specimens that include methamphetamine?

- If the D.E.A. Western Laboratory does perform GC/MS analyses on externally supplied testing specimens that include methamphetamine, how frequently are these specimens submitted?

- Has the external agency that provides the externally supplied testing specimens provided reports which assess the quantitative performance of the D.E.A. Western Laboratory in the GC/MS analyses of methamphetamine?

- If such reports are provided, what is the proficiency of the D.E.A. Western Laboratory when it performs GC/MS analyses of externally supplied samples that contain a known quantity of methamphetamine?

On behalf of Mr. Snegirev, I have to persist in this discovery request. My only interest is in determining whether there is a basis to challenge the accuracy of the actual methamphetamine weight claims made in the presentence report. Accordingly, I would suggest that the requested materials be produced. In the alternative, I would recommend that we arrange for Dr. Sedgwick to speak

E-5

James Goeke
October 26, 2005
Page 4

directly with Donald Chin or William Moriwaki at a date and time that is convenient for them and when you and I could be present to monitor the discussion. Such a conversation could be conducted by telephone and would take not more than 30 minutes. Having the scientists speak directly to each other is probably more efficient and will eliminate any dispute we have.

Please let me know at your earliest convenience whether the requested information can be provided or whether, as an alternative, Dr. Sedgwick could speak with either Donald Chin or William Moriwaki.

Also please call if you have questions.


Sincerely yours,

Kevin F. McCoy
Assistant Federal Defender

KFM/km
Enclosure

E-6