UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>vs.<br><br>PETRO SNEGIREV,<br><br>                Defendant. | 3:05-cr-00024-JWS-JDR<br><br>RECOMMENDATION ON<br>PETITION TO VACATE<br>(Documents 91 & 106) |

Defendant Petro Snegirev moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255.  Doc. 91.  He filed an amended petition at doc. 106.[1]  The government filed an opposition to the amended petition.  Doc. 110. The motion has been briefed by both parties, and no evidentiary hearing is required to dispose of the defendant's claims since the record is adequate to address the claims of ineffective assistance of counsel, and the defendant has not alleged facts

---

[1] The amended petition filed at document 107 appears to be a duplicate with attachments.

outside the record that, if true, would entitle him to relief. *See*, <u>United States v. Mullen</u>, 96 F.3d 1155, 1159 (9th Cir. 1996). Upon due consideration of the pleadings and arguments of counsel, the magistrate judge recommends that the motion to vacate be denied.

### Background and Procedural History

The background and procedural history for Snegirev's motion to vacate has been succinctly and accurately set forth in the government's opposition. The following information is taken from that pleading. On March 15, 2005, Snegirev was indicted on two counts of drug trafficking: one count of distribution of a mixture containing methamphetamine weighing at least 50 grams in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C).

The Indictment stemmed from an investigation by the Anchorage Police Department (APD) and the Drug Enforcement Administration (DEA). Specifically, in early 2005, the APD received information from a confidential informant (CI) that Snegirev was a drug dealer who regularly flew to Oregon to purchase methamphetamine, returned to Anchorage, and then sold the methamphetamine. The CI told the police that he had purchased methamphetamine from Snegirev on dozens of occasions in the previous year and a half, and provided other information about Snegirev that the police confirmed.

Based on this information, the police conducted a monitored sting operation beginning on February 17, 2005, through March 2, 2005, during the course of which Snegirev sold the CI methamphetamine on February 24, 2005, sold 54.8 grams of a mixture containing methamphetamine to an undercover APD Detective Gordon Dorr on March 2, 2005, and also agreed to obtain a large quantity of methamphetamine for Detective Dorr. The confidential informant wore a wiretap during all contacts with Snegirev. When the operation concluded with Snegirev's arrest on March 2, 2005, he was also in the possession of over 25 grams of a substance that tested positive for methamphetamine. The Indictment charged Snegirev only with the distribution of methamphetamine to the undercover police officer on March 2, 2005 and Snegirev's separate possession of methamphetamine with the intent to distribute on March 2, 2005.

Snegirev's trial by jury commenced on June 13, 2005 in Anchorage, Alaska. During trial the United States presented testimony from APD Detectives Gordon Dorr and Micki Doll and DEA chemist William Moriwaki, among other witnesses. Specifically, the United States presented testimony and other evidence concerning the events leading up to Snegirev's March 2, 2005 sale of methamphetamine to Detective Dorr, including tape-recorded conversations between Snegirev and Detective Dorr. This evidence constituted proof of the charge in Count 1. The government also presented evidence concerning Snegirev's

subsequent arrest, later in the day on March 2, 2005. When Snegirev was arrested, he had in his possession an additional quantity of methamphetamine. This evidence constituted proof of the charge in Count 2. As for the quantity of methamphetamine involved, the United States presented evidence from DEA chemist Moriwaki that the mixture of methamphetamine Snegirev sold to Detective Dorr weighed approximately 54.8 grams and contained approximately 41.6 grams of pure methamphetamine and that the additional mixture of methamphetamine that Snegirev possessed at the time of his arrest weighed approximately 25.9 grams and contained approximately 19.1 grams of pure methamphetamine.

Kevin McCoy was appointed to represent Snegirev through trial and sentencing which occurred on November 9, 2005. At trial, McCoy cross-examined the two APD detectives but he did not cross-examine DEA lab chemist, William Moriwaki, who analyzed the drugs for the actual methamphetamine content. The defense called no witnesses at trial. McCoy presented no evidence at trial to test the DEA chemist as to the amount of the drug and/or the quality control of the DEA laboratory, trace the chain-of-custody of the drugs, or probe the "field testing" that APD Special Agent Zack Jones presented to the grand jury.

Mr. McCoy knew the criminal history of the confidential informant, and that he was incarcerated waiting for a revocation of probation hearing. There was

no cross-examination of either Detectives Doll or Dorr as to the potential length of the confidential informant's incarceration should his probation be revoked.

McCoy pursued discovery of the DEA laboratory proficiency in order to challenge the DEA analysis of the quantity and purity of the methamphetamine for sentencing. Snegirev argues that McCoy should have meaningfully cross-examined the DEA chemist at trial.

On June 14, 2005, following a two-day jury trial, Snegirev was convicted of both counts in the Indictment. The district court imposed a sentence of 121 months on November 9, 2005. Snegirev's appeal was denied September 25, 2006. Snegirev timely filed an initial motion to vacate pursuant to 28 U.S.C. § 2255 on June 18, 2007. Snegirev's Amended 28 U.S.C. § 2255 Petition to Set Aside/Vacate Conviction now at issue was filed on November 8, 2007.

**Allegations**

In his amended petition to vacate, Snegirev argues that his trial attorney, Assistant Federal Public Defender Kevin McCoy, rendered ineffective assistance of counsel under the Sixth Amendment. Specifically, he alleges that his attorney denied him his constitutional right to counsel by not calling the confidential informant as a trial witness, failing to challenge the DEA laboratory analysis of the drug evidence at trial, and failing to assert as a defense entrapment or outrageous governmental conduct by the APD detectives when they relied upon a confidential

informant who was not trustworthy. None of these grounds alleging ineffective assistance of counsel has merit. They are discussed below.

### Standard of Review

To succeed on an ineffective assistance of counsel claim, the defendant must show both inadequate performance by his counsel and prejudice arising therefrom. Strickland v. Washington, 466 U.S. 668 (1984). To show inadequate performance, the defendant must point to specific errors and omissions in the record. United States v. Johnson, 820 F.2d 1065, 1073 (9th Cir. 1987). Counsel's conduct must so undermine the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Williams v. Calderon, 52 F.3d 1465, 1469 (9th Cir. 1995). To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* Counsel's errors must be "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." *Id.*

Where the ineffective assistance of counsel claim is based on counsel's failure to investigate or put on specific evidence, the defendant must make specific allegations about the content of the proposed testimony in order to show how the failure to present that evidence was prejudicial. United States v. Dalton, 785 F.Supp. 126, 128 (D. Mont. 1990).

3-05-cr-24-JWS-JDR-Snegirev-RRonpetitiontovacate@106.final_mtd.wpd

6

3:05-cr-00024-JWS-JDR                    R&R on Motion to Vacate at 91, 106                    Page 6 of 13
Signed by MJ Roberts on 2/12/2008

The defendant must overcome a strong presumption that trial counsel's performance fell within a wide range of reasonable assistance. Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002), *cert. denied*, 537 U.S. 942 (2002).  Although individual deficiencies may not, by themselves, meet the Strickland prejudicial standard, when considered cumulatively, the deficiencies may constitute sufficient prejudice to justify granting the motion to vacate. United States v. Cronic, 466 U.S. 648, 649 (1984).

**Application of Law**

Snegirev first claims that McCoy erred by not calling the confidential informant (CI) as a trial witness.  Prior to the trial, the prosecutor notified Mr. McCoy that the CI would not be called as a government witness at trial.  The CI's criminal history, including felony convictions, was known to Mr. McCoy.  The public defender also knew that the CI was waiting for a revocation of probation hearing.

Snegirev acknowledges that Detective Dorr testified at trial that he did not trust the CI who was self-serving.  Snegirev argues that his attorney should have put on evidence that the CI had a motivation to lie in order to avoid returning to prison.  He contends that calling the CI as a trial witness would have destroyed the credibility of the CI.

Calling the CI as a trial witness would have presented additional problems for Snegirev.  It is undisputed that the government had conducted a

"controlled buy" of methamphetamine by the CI from the defendant prior to the crimes charged in the indictment. This crime was not charged in the indictment or introduced as evidence concerning the pending charges. Calling the CI as a defense witness at trial would have risked that this additional evidence of criminal activity would likely come into evidence. McCoy's decision not to call the CI as a trial witness did not constitute ineffective assistance of counsel, and certainly did not prejudice the defendant under the circumstances.

Secondly, Snegirev claims that McCoy erred in not challenging the validity of the DEA chemist's analysis of the drug evidence at trial. It is undisputed that McCoy knew that the government intended to rely upon the testimony of DEA chemist William Moriwaki at trial concerning the purity/quantity of methamphetamine sold to the CI and Detective Dorr by Snegirev. The defendant complains that McCoy presented no testimony to challenge the DEA chemist as to the amount of the drug and/or the quality-control of the DEA laboratory, or the chain-of-custody of the drugs or the "field" testing that APD Special Agent Zack Jones attested to before the grand jury.

The defendant was convicted of distribution of a mixture containing methamphetamine weighing at least 50 grams and a second count of possession with intent to distribute methamphetamine, namely the 25 grams of a substance that tested positive for methamphetamine. After Snegirev was convicted of the two

charges, his attorney, Kevin McCoy, pursued discovery of the DEA laboratory proficiency in order to challenge the DEA analysis of the quantity and purity of the methamphetamine. APD Special Agent Zack Jones testified before the grand jury as to the amount of the drug and/or the quality of the DEA laboratory. Here, Snegirev faults his attorney for not seeking discovery from the government concerning the DEA laboratory proficiency and/or methods of testing and analysis. He faults his attorney for not obtaining laboratory data to, at the least, cross-examine the DEA chemist at trial. His attorney obtained no independent analysis.

Failure to challenge the DEA laboratory analysis of the drug evidence at trial did not prejudice Snegirev. McCoy did challenge the analysis of the drug evidence at the sentencing hearing, and the challenge was rejected by the court. The quantity of the drugs was directly relevant for sentencing; but at trial, the government was required simply to prove with regard to count 1 that the defendant distributed a mixture weighing at least 50 grams that contained any amount of methamphetamine. With regard to count 2, the government had to prove that Snegirev possessed any amount of methamphetamine with intent to distribute it. No showing has been proffered that the specifics of purity concerning the methamphetamine at issue was any significantly less than that shown in the results by the DEA laboratory. The defendant makes no claim that the substances tested were not methamphetamine.

Thirdly, Snegirev claims that McCoy erred by not asserting the defense of entrapment or a defense of outrageous governmental conduct. He argues that McCoy failed to challenge the proof of the government's evidence of his intent to distribute the drugs at issue. With regard to the defense of entrapment, the defendant argues that he had no prior criminal record, and his attorney should have challenged the APD detectives' aggressive use of the CI when he had no predisposition to commit a drug offense. The evidence at trial belies that argument. The use of the CI was sufficiently explored by counsel at trial. No factual predicate was established to support an entrapment defense. Nor has any such predicate been proffered to support the argument that an entrapment defense was viable. As evidence that such a defense was not viable, the government relies upon the recordings of the defendant discussing drug trafficking referenced in the Pretrial Services Report.

Governmental use of a confidential informant is a recognized lawful police tactic. There were tape-recorded conversations between the defendant and Detective Dorr. When the defendant was arrested, he had in his possession a quantity of methamphetamine. The failure of his counsel to challenge whether Snegirev had the intent to distribute the drugs in his possession did not prejudice him.

The defense of outrageous governmental conduct focuses on the conduct of the government agents. No evidence has been proffered that meets this standard. The government's position that the defendant intended to distribute the drugs was supported by the testimony of Detective Dorr who posed as a buyer willing to invest in a quantity of methamphetamine to sell at a profit. His meeting with the defendant was tape recorded. On February 25, 2005, Detective Dorr had a meeting with the defendant and negotiated $6,000 for three ounces of methamphetamine. A likely way for Snegirev to introduce his own statements of intent would have been to testify at trial. If he had testified in order to introduce statements of intent, he would have subjected himself to cross-examination on other drug trafficking which the government was prepared to introduce. Mr. McCoy did not render ineffective assistance of counsel when he did not raise the defense of outrageous governmental conduct.

Because none of the specific allegations of ineffective assistance of counsel have merit, they do not amount to an ineffective assistance of counsel cumulatively. No evidentiary hearing is required to determine the motion because no additional facts are alleged which, if proven true, would entitle Snegirev to relief;
//

3-05-cr-24-JWS-JDR-Snegirev-RRonpetitiontovacate@106.final_mtd.wpd                                11

3:05-cr-00024-JWS-JDR          R&R on Motion to Vacate at 91, 106          Page 11 of 13
                               Signed by MJ Roberts on 2/12/2008

and the issues presented may be determined by a review of the record. For the foregoing reasons, the motion to vacate should be denied. IT IS SO RECOMMENDED.

DATED this Twelfth day of February, 2008, at Anchorage, Alaska.

   /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than NOON, **February 27, 2008**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **March 5, 2008**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).